UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

In re: Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc., Chapter 11

Debtor

---------------------------------------------------------------- x

# DISCLOSURE STATEMENT

## I. INTRODUCTION

Motor Parkway Enterprises, Inc. (the "Debtor"), the above-referenced debtor and debtor-in-possession, submits this disclosure statement (the "Disclosure Statement") pursuant to §1125 of title 11, United States Bankruptcy Code (the "Bankruptcy Code"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan of Reorganization, dated November 24, 2015 (the "Plan"),[1] filed with the United States Bankruptcy Court, Eastern District of New York (the "Court"), and annexed hereto as **Exhibit A.**

The proposed distributions under the Plan are discussed under Section III of this Disclosure Statement. General unsecured creditors are classified as Class 5, and will receive a twelve (12%) percent distribution of their allowed claims as follows: (1) two (2%) percent on the effective date of the Plan; and (2) two (2%) percent every twelve (12) months thereafter for a period of five (5) years.

### A. Purpose of this Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case.
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the Plan is confirmed).
- Who can vote on or object to the Plan.
- What factors the Court will consider when deciding whether to confirm the Plan.
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plain itself that will, if confirmed, establish your rights.

[1] Capitalized terms used but not herein defined shall have the meanings ascribed in the Plan.

**B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Hearing to Approve this Disclosure Statement*

The hearing at which the Court will determine whether to approve this Disclosure Statement will take place before the Honorable Alan S. Trust, United States Bankruptcy Judge, Eastern District of New York, at the Courthouse located at 290 Federal Plaza, Central Islip, New York, Room 960, on January 6, 2016 at 10:00 a.m. (the "Approval Hearing").

2. *Deadline for Objecting to the Adequacy of the Disclosure Statement*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Macco & Stern, LLP and the Debtor by December 31, 2015 at 4:00 p.m.

3. *Deadline for Voting to Accept or Reject the Plan*

At the Approval Hearing, the Court will establish deadlines associated with voting to accept or reject the Debtor's Plan.

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot to Macco & Stern, LLP, 135 Pinelawn Road, Suite 120 South, Melville, NY 11747, Attn: Cooper J Macco, Esq. See Section IV.A., below, for a discussion of voting eligibility requirements.

4. *Hearing to Confirm the Plan*

At the Approval Hearing, if the Disclosure Statement is approved, the Court will establish the date of the hearing on confirmation of the Debtor's Plan (the "Confirmation Hearing").

5. *Deadline for Objecting to Confirmation of the Plan*

At the Approval Hearing, if the Disclosure Statement is approved, the Court will establish the deadline to object to the confirmation of the Debtor's Plan (the "Confirmation Hearing").

6. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Debtor's counsel, Macco & Stern, LLP, 135 Pinelawn Road, Suite 120 South, Melville, NY 11747, Attn: Cooper J Macco, Esq., (631) 549-7900.

## II. BACKGROUND

### A. Description and History of the Debtor's Business

In or about November 1986, the Debtor was formed under the laws of the State of New York.

Thereafter, the Debtor operated a gas station. In connection with its operation, the Debtor entered into (1) a written lease agreement with Simco Management, c/o 1520 Colin Development LLC, 1520 Northern Boulevard, Manhasset, NY 11030, whereby the Debtor lease non-residential real property located at, and known as, 260 Motor Parkway, Brentwood, NY 11717 (the "Lease"), dated September 1, 2009; (2) a franchise agreement with BP Products North America, Inc. ("BP") by written agreement (the "BP Franchise Agreement"), dated July 1, 2011; and (3) a Business Conversion Franchise Agreement, and related agreements with 7-Eleven, Inc., wherein the Debtor agreed to operate a 7-Eleven Franchise (collectively, the "7-Eleven Franchise Agreement"), dated March 26, 2009.

### B. Insiders of the Debtor

The Debtor is managed by its sole shareholder, Steven Keshtgar who is also an officer and director of the Debtor.

### C. Management of the Debtor Before and During the Bankruptcy

Mr. Keshtgar operated the Debtor prior to its filing of a petition for relief under chapter 11 of the Bankruptcy Code. Mr. Keshtgar continues to manage the Debtor during the pendency of its case.

After confirmation of the Plan, Mr. Keshtgar will continue to manage the Debtor.

### D. Events Leading to Chapter 11 Filing

Due to an offset of the Debtor's bank account by its secured creditor, NYCX, the Debtor was unable to pay for gas supplies and other monthly operating expenses. Thereafter, the Debtor entered into a promissory note with Francis Keshtgar to purchase additional gasoline in exchange for a security interest in the gasoline purchased with the amounts borrowed.

### E. Significant Events During the Case

On December 24, 2014, (the "Petition Date") the Debtor and fourteen associated entities filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. [2] The Debtor is

[2] The fifteen associated entities, with case numbers, are as follows: (1) Medford Development Corp., 14-75666 (AST); (2) Motor Parkway Enterprises, Inc., 14-75667 (AST); (3) Airport Development Corp., 14-75683 (AST); (4) Wheeler Development LLC, 14-75668 (AST); (5) Smithtown Development Corp., 14-75669 (AST); (6) Brentwood Development Corp., 14-75670 (AST); (7) Holbrook Development Corp., 14-75671 (AST); (8) Carman Development Corp., 14-75672 (AST); (9) Maple Avenue Hauppauge Dev. Corp., 14-75674 (AST); (10) Port Jefferson Development Corp., 14-75675 (AST); (11) Ronkonkoma Development Corp., 14-75676 (AST); (12)

authorized to operate as a debtor-in-possession under Bankruptcy Code §§1108 and 1109. To date, the Office of the United States Trustee (the "UST") has not appointed a chapter 11 trustee or examiner, nor has an official committee of unsecured creditors been formed.

### F. Projected Recovery of Avoidable Transfers

The Debtor has reviewed its books and records and Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions because the Debtor has, in its business judgment, determined that there will be no benefit to the Debtor's estate.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.

All claims in Class 1, 2, 3, 4 and 5 shall have the amounts fixed for voting purposes in the amount of their filed proofs of claim.

Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

The identity and fair market value of the Debtor's assets are listed in **Exhibit B** and the valuation of those assets as determined by the Debtor is also set forth. In addition, the estimated liquidation value at the outset is also set forth in **Exhibit B.**

The Debtor's pre-Petition Date 2014 Profit and Loss Statement are set forth in **Exhibit C**. The Debtor has filed monthly operating reports with the Court. The Debtor's most recent operating report is annexed hereto as **Exhibit D**. The Debtor financial projections are set forth on **Exhibit E**.

## III. SUMMARY OF PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND SECURITY INTERESTS

### A. Purpose of the Plan of Liquidation

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

---

Islandia Development Corp., 14-75676 (AST); (13) Oceanside Enterprises Corp., 14-75678 (AST); (14) Islip Development Corp., 14-75679 (AST); and (15) Westbury Enterprises Inc., 14-75680 (AST).

**B. Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Debtor has *not* placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the debtor's Chapter 11 case which are allowed under Section 507(a)(2) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their treatment under the Plan.

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $18,000.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court | $30,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to Court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan. |
| Office of the U.S. Trustee Fees | $1,500.00 | Paid in full on the effective date of the Plan |
| **TOTAL** | **$49,500.00** | |

1. *Secured Tax Claims*

Secured tax claims will receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief

The Debtor has one (1) secured tax claim in the amount $89,594.79 held by the New York State Department of Taxation and Finance.

These claims will be paid in forty-five (45) monthly installments commencing March 24, 2016, provided the term shall not end later than 5 years from the Petition Date *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by Bankruptcy Code §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The Debtor has thee (3) priority tax claims as follows: (1) $20,741.21 held by the New York State Department of Taxation and Finance; (2) $500.00 held by the Internal Revenue Service; and (3) $9.36 held by the Department of Labor.

These claims will be paid in forty-five (45) monthly installments commencing March 24, 2016, provided the term shall not end later than 5 years from the Petition Date

**B. Classes of Claims and Equity Interests**

1. *Classes of Secured Claims*

Allowed Secured Claims are claims allowed by property of the Debtor's bankruptcy estate to the extent allowed as secured claims arising under Bankruptcy Code §506. If the value of the collateral securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be a general unsecured claim.

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | Frank Keshtgar | Impaired | Paid in full, amortized at four and one-half (4.5%) percent over one hundred twenty (120) months commencing thirty (30) days after confirmation of the Plan. |
| 2 | NYCX | Impaired | Paid $950,000 as follows: (1) $100,000 upon confirmation of the Plan; and (2) $850,000 amortized at four and one-half (4.5%) percent over one hundred twenty (120) months commencing thirty (30) days after confirmation of the Plan ($8,809.26/month), with a balloon payment due at the end of seven (7) years. No payment shall be made on the unsecured portion of the claim held by NYCX. However, NYCX has a full reservation of rights to assert the full claim amount against non-debtor entities. An event of default occurs if the Debtor: (i) fails to make a payment to NYCX (above); (ii) defaults under the Plan; (iii) defaults to BP Products North America (the franchisor), Simco Management (the landlord), or a taxing authority; and (iv) |

| | | | |
|---|---|---|---|
| | | | fails to confirm a plan on or before March 31, 2016. A default that is uncured shall constitute an event of default against all related entities operating a gas station, including, but not limited to, Holbrook Development Corp., Case No. 14-75671 (AST), and may trigger a sales process. |
| 3 | Secured Claims | Impaired | Maintain a lien on the collateral in the amount of the value of the collateral securing the lien not otherwise encumbered, and any and all deficiency shall be treated as a general unsecure claim. |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in Bankruptcy Code §§507(a)(1), (4), (5), (6), and (7) of are required to be placed in classes. The Code requires that each holder of such claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart identifies the Plan's proposed treatment of Class 4, which contains the priority unsecured claims against the Debtor.

| **Class Number** | **Description** | **Impairment** | **Treatment** |
|---|---|---|---|
| 4 | Wage Claims | Not Impaired | Paid in full on the Effective Date. |

3. *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under Bankruptcy Code §507(a).

The following chart identifies the Plan's proposed treatment of Class 5, which contain general unsecured claims against the Debtor.

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | General Unsecured Claims | Impaired | Receive a distribution of twelve (12%) percent of their allowed claim, to be distributed as follows: (1) two (2%) percent on the effective date of the Plan; and (2) two (2%) percent every twelve (12) months thereafter for a period of five (5) years. |

4. *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 6 | Steven Keshtgar | Impaired | Shall receive no cash or other property and their interests in the Debtor shall be cancelled. |

**C. Means of Implementing the Plan**

Payments and distributions under the Plan will be funded by the Debtor's post-petition operations. It is estimated that the debtor needs $162,868 upon confirmation of the Plan, plus an additional $145,935 per year for distributions. Based upon its operations, the Debtor can make the payments under the Plan.

**D. Post-Confirmation Management**

The post-confirmation managers of the Debtor, and their annual compensation, shall be as follows:

| Name | Insider | Position | Compensation |
|---|---|---|---|
| Steven Keshtgar | Yes | President | $120,000.00 |

**E. Risk Factors**

The proposed Plan has the following risks: if the Debtor is unable to make payments from the successful operation of its business, the management would have to consider closing the business and liquidating the company by means of filing a voluntary petition under Chapter 7 of the Bankruptcy Code.

**F. Executory Contracts and Unexpired Leases**

The Debtor is a party to the following executory contracts and unexpired leases: (1) the Lease of non-residential real property; (2) the BP Franchise Agreement; and (3) the 7-Eleven Franchise Agreement. By Court Order, the Debtor has already assumed the Lease. The Debtor intends to assume the BP Franchise Agreement and the 7-Eleven Franchise Agreement as of the Effective Date of the Plan.

Upon information and belief, there are no other executory contracts or unexpired leases. However, out of an abundance of caution, to the extent other executory contracts and unexpired leases exist, the other executory contracts and unexpired leases will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**G. Tax Consequences**

***Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.***

The Debtor has not researched the Federal Income Tax consequences of the Plan for holders of claims and interest based upon the Internal Revenue Code, the Treasury Regulations promulgated thereunder, traditional authority, and current administrative rules and practice. The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given to the interpretation by the Internal Revenue Service. Further, the Federal Income Tax consequences to any particular claimant or interest holder may be affected by matters not discussed herein. There also may be state, local or foreign tax considerations applicable to each claimant or holder of an interest.

## II. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in Bankruptcy Code §§1129(a) or (b). These include the requirements that: (1) the Plan must be proposed in good faith; (2) at least one impaired class of claims must accept the Plan, without counting votes of insiders; (3) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (4) the Plan must be feasible. These requirements are not the only requirements listed in Bankruptcy Code §1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.

A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtor believes that classes 1, 2, 3, and 5 are impaired and that holders of claims in this class is therefore entitled to vote to accept or reject the plan. All claims in Class 1, 2, 3 and 5 shall have the amounts fixed for voting purposes in the amount of their filed proofs of claim.

The Debtor believes that Class 6 equity interest holders are insiders and therefore do not have the right to vote to accept or reject the plan.

#### 1. *What is an Allowed Claim or an Allowed Equity Interest*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either: (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated; or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

#### 2. *What Is an Impaired Claim or Impaired Equity Interest*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in class that is *impaired* under the Plan. As provided in Bankruptcy Code §1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who Is Not Entitled to Vote*

The holders of the following five (5) types of claims and equity interest are not entitled to vote:

- Holders of claims or equity interests that have been disallowed by an order of the Court.
- Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interest" (as discussed above), unless they have "allowed" for voting purposes.
- Holders of claims or equity interest in unimpaired classes.
- Holders of claims entitled to priority pursuant to Bankruptcy Code §§507(a)(2), (3), and (8).
- Holders of claims or equity interests in classes that do not receive or retain any value under the Plan.
- Administrative Expenses.

***Even if you are not entitled to vote on the Plan, you have the right to object to confirmation of the Plan and the adequacy of the Disclosure Statement.***

4. *Who can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B. Votes Needed to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless: (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class; and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan; and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their vote to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by Bankruptcy Code §1129(b). A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Bankruptcy Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Bankruptcy Code §1129(a)(8), does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

Although Steven Keshtgar, an equity interest holder of Class 6, is having his shares cancelled, he is continuing to manage the Debtor after it the effective date of the Plan. This does not affect the feasibility of Plan.

Particularly, pursuant to the absolute priority rule, no holder of a junior class of creditors can receive any rights on their claims unless all senior claimants have been paid in full. Although the treatment of Class 6 does not comply with the absolute priority rule, it does fall within the "new value corollary", under which the objection of an impaired senior class does not bar a junior class from receiving or retaining property interest in the reorganized Debtor if they contribute new capital in money or money's worth, reasonably equivalent to the property's value, and necessary for a successful reorganization.

Aziz Keshtgar ("Aziz"), the father of Steven Keshtgar, seeks to receive an equity interest and contribute "money or money's worth" in the form of needed capital to the Debtor in an amount reasonably equivalent to the value of the equity interest sought to be retained. To the extent there is not sufficient money to make an initial distribution, including the payment of administrative creditors. Aziz will pay such amounts personally. Aziz Keshtgar has already committed to pay not less than $50,000 towards the administrative claims and initial distribution. Aziz has expressed his intent to keep Steven Keshtgar as manager of the Debtor after the Effective Date of the Plan.

***You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in liquidation under Chapter 7 of the Bankruptcy Code. A liquidation analysis is attached to this Disclosure Statement as **Exhibit B**.

**D. Feasability.**

The Court must find that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Debtor believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payment.

The Plan proponent has provided projected financial information. Those projections are listed on **Exhibit E.**

The Plan proponent's financial projections show that the Debtor will have an aggregate annual cash flow, after paying operating expenses and post-confirmation taxes, of approximately $145,935 per year. The final Plan payment is expected no later than ten (10) years after the effective date of the Plan.

***You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.***

## III. EFFECT OF CONFIRMATION OF THE PLAN

**A. Discharge of the Debtor**

On the effective date of the plan, the Debtor shall be discharged from any debt that arose before confirmation of the plan, subject to the occurrence of the effective date, to the extent specified in Bankruptcy Code §1141(d)(l)(A), except that the Debtor shall not be discharged of any debt: (i) imposed by the Plan; (ii) of a kind specified in Bankruptcy Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c); or (iii) of a kind specified in Bankruptcy Code §1141(d)(6)(B). After the effective date of the Plan, any claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

After the Effective Date of the Plan, the Debtor shall cease operating.

**B. Modification of the Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if: (1) the Plan has not been substantially consummated; and (2) the Court authorizes the proposed modifications after notice and a hearing.

**C. Final Decree**

Once the estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such final decree on its own motion.

Dated: November 24, 2015

**MOTOR PARKWAY ENTERPRISES, INC.**
Debtor and Debtor-In-Possession

By: *s/ Steven Keshtgar*
Steven Keshtgar
President

**MACCO & STERN, LLP**
Attorneys for the Debtor

By: *s/ Michael J. Macco*
Michael J. Macco
135 Pinelawn Road, Suite 120 South
Melville, New York 11747
(631) 549-7900

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

In re: Case No. 14-75667 (AST)

Motor Parkway Enterprises, Inc., Chapter 11

Debtor

---------------------------------------------------------------- x

# DEBTOR'S PLAN OF REORGANIZATION

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of Motor Parkway Enterprises, Inc. (the "Debtor") from the continued operation of its business.

This Plan provides for one (1) class of unsecured creditors and one (1) class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately twelve ($.12) cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 Class 1: Frank Keshtgar

2.02 Class 2: NYCX Claim

2.03 Class 3: Secured Claims

2.04 Class 4: Wage Claims

2.05 Class 5: General Unsecured Claims

2.06 Class 6: Equity Interests

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, UST FEES, AND PRIORITY TAX CLAIMS

3.01 Unclassified Claims. Under Bankruptcy Code §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02 Administrative Expense Claims. Each holder of an administrative expense claim allowed under Bankruptcy Code §503 will be paid in full on the effective date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 Priority Tax Claims. Each holder a priority tax claim will be paid pursuant to Bankruptcy Code §1129(a)(9)(C).

3.04 United States Trustee Fees. All fees required to be paid pursuant to 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to a case under another chapter of the Bankruptcy Code.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and Interests shall be treated as follows under the Plan:

| Class Number | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | Frank Keshtgar | Impaired | Paid in full, amortized at four and one-half (4.5%) percent over one hundred twenty (120) months commencing thirty (30) days after confirmation of the Plan. |
| 2 | NYCX | Impaired | Paid $950,000 as follows: (1) $100,000 upon confirmation of the Plan; and (2) $850,000 amortized at four and one-half (4.5%) percent over one hundred twenty (120) months commencing thirty (30) days after confirmation of the Plan ($8,809.26/month), with a balloon payment due at the end of seven (7) years. No payment shall be made on the unsecured portion of the claim held by NYCX. However, NYCX has a full reservation of rights to assert the full claim amount against non-debtor entities. An event of default occurs if the Debtor: (i) fails to make a payment to NYCX (above); (ii) defaults under the Plan; (iii) defaults to BP Products North America |

| | | | |
|---|---|---|---|
| | | | (the franchisor), Simco Management (the landlord), or a taxing authority; and (iv) fails to confirm a plan on or before March 31, 2016. A default that is uncured shall constitute an event of default against all related entities operating a gas station, including, but not limited to, Holbrook Development Corp., Case No. 14-75671 (AST), and may trigger a sales process. |
| 3 | Secured Claims | Impaired | Maintain a lien on the collateral in the amount of the value of the collateral securing the lien not otherwise encumbered, and any and all deficiency shall be treated as a general unsecure claim. |
| 4 | Wage Claims | Not Impaired | Paid in full on the Effective Date. |
| 5 | General Unsecured Claims | Impaired | Receive a distribution of twelve (12%) percent of their allowed claim, to be distributed as follows: (1) two (2%) percent on the effective date of the Plan; and (2) two (2%) percent every twelve (12) months thereafter for a period of five (5) years. |
| 6 | Equity Interests | Impaired | Shall receive no cash or other property and their interests in the Debtor shall be cancelled. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed and, as to which, either: (ii) a proof of claim has not been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

5.02 Delay of Distribution of a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed.

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and unexpired leases, effective upon the effective date of the Plan as provided for in Article VII:

i. On or about September 1, 2009, Debtor entered into a written lease agreement with Simco Management, c/o 1520 Colin Development LLC, 1520 Northern Boulevard, Manhasset, NY 11030, whereby the Debtor lease non-residential real property located at, and known as, 260 Motor Parkway, Brentwood, NY 11717 (the "Lease"). By order, dated July 16, 2015, the Court approved the Debtor's assumption of the Lease pursuant to Bankruptcy Code §365.

ii. On or about July 1, 2011, Debtor entered into a Dealer Supply Agreement, along with related agreements, with BP Products North America, Inc. wherein the Debtor agreed to act as a reseller of BP's trademarked motor fuels and other products (collectively, the "BP Franchise Agreement").

iii. On or about March 26, 2009, the Debtor entered into a Business Conversion Franchise Agreement, and related agreements with 7-Eleven, Inc., wherein the Debtor agreed to operate a 7-Eleven Franchise (collectively, the "7-Eleven Franchise Agreement").

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a), above, or before the date of the order confirming this Plan, upon the effective date of Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ten (10) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Payments and distributions under the Plan will be funded by the Debtor's post-petition operations. It is estimated that there is $162,868 needed by the Debtor upon confirmation of Plan, plus an additional $145,935 per year for distributions under the Plan. Based upon its operations, the Debtor can make payments under the Plan.

# ARTICLE VIII
## GENERAL PROVISIONS

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in Bankruptcy Code §§101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, as supplemented by the terms defined herein.

8.02 Effective Date of the Plan. The effective date of this Plan is the eleventh (11th) business day following the date of the entry of the order confirming this Plan. However, if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 Controlling Effect. Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

8.07 Corporate Governance. The debtor shall be prohibited until completion of all plan payments from issuing non-voting equity securities, transfer all or a substantial part of property of the estate to one or more entities nor manage or consolidate the debtor corporation.

8.08 Vesting. All assets of the Debtor shall re-vest in the Debtor upon confirmation.

**ARTICLE IX**
**DISCHARGE**

9.01 Discharge. On the confirmation date of this Plan (the "Confirmation Date"), the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in Bankruptcy Code §1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in Bankruptcy Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c); or (iii) of a kind specified in Bankruptcy Code §1141(d)(6)(B).

**ARTICLE X**
**RETENTION OF JURISDICTION**

10.01 The Court shall retain jurisdiction of these proceedings following the Confirmation Date for the following purposes:

(a) to hear and determine any objections to the allowance of Claims;

(b) to determine any and all applications for compensation for professional persons and similar fees;

(c) to determine any and all pending applications for the rejection or assumption of executory contracts, for rejection or assumption and assignment of same where Debtor is a party or may be liable, and to hear, determine, and liquidate (if applicable), any and all resulting claims;

(d) to determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court and pending on the Confirmation Date;

(e) to modify the Plan pursuant to Bankruptcy Code §1127 to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

(f) to hear and determined all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement or implementation of the Plan;

(g) to hear and determine all controversies, suits and disputes, if any, as may arise

(h) with regard to orders of this Court in the chapter 11 case entered on or before the Confirmation Date;

(i) to adjudicate all controversies concerning the classification of any claim or equity interest;

(j) to liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(k) to adjudicate all claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(l) to adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the chapter 11 case;

(m) to recover all assets and properties of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Debtor as of the Confirmation Date;

(n) to determine all questions and disputes regarding recovery of and entitlement to the Debtor's assets and determine all Claims and disputes between the Debtor and any other entity, whether or not subject to an action pending as of the Confirmation Date;

(o) to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

(p) to enter an order of consummation or final decree concluding and terminating the chapter 11 case; and

(q) to make such orders as shall be necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof.

**ARTICLE XI**
**EVENT OF DEFAULT**

11.01 Only the occurrence of either of the following shall constitute a default by the Debtor under the Plan:

(a) The failure of the Debtor to make any payment when due under the Plan, which failure shall have been uncured for a period of thirty (30) days after the Debtor's receipt of written notice thereof unless such payment has been extended in accordance with the provisions of the Plan; and

(b) The failure of the Debtor to comply with any of the specific covenants contained in the Plan, except for default in payment as provided in paragraph 11.02 above, which failure shall remain uncured for a period of thirty (30) days after the Debtor has received written notice of such failure.

Dated: November 24, 2015

**MOTOR PARKWAY ENTERPRISES, INC.**
Debtor and Debtor-In-Possession

By: *s/ Steven Keshtgar*
Steven Keshtgar
President

**MACCO & STERN, LLP**
Attorneys for the Debtor

By: *s/ Michael J. Macco*
Michael J. Macco
135 Pinelawn Road, Suite 120 South
Melville, New York 11747
(631) 549-7900

# EXHIBIT B

**ESTIMATED LIQUIDATION ANALYSIS OF DEBTOR'S ASSETS AS OF OCTOBER 31, 2015**

| ASSETS | FAIR MARKET VALUE | ESTIMATED LIQUIDATION VALUE |
|---|---|---|
| Accounts Receivable under ninety (90) days old | $15,000.00 | $4,500.00 |
| Cash, Equivalent and Credit Card Receipts | $185,000.00 | $185,000.00 |
| Inventory and Raw Materials | $13,350.00 | $6,500.00 |
| Office Equipment | $650.00 | $200.00 |
| | **TOTAL: $218,000.00** | **$196,200.00** |

**ESTIMATED CHAPTER 7 DISTRIBUTION IN THE EVENT OF CONVERSION AND LIQUIDATION AS OF OCTOBER 31, 2015**

| TYPE OF DEBT | AMOUNT OWED | ESTIMATED PAYMENT |
|---|---|---|
| Estimated Liquidation Value (Above) | $196,200.00 | |
| Post-Petition Liabilities | $18,000.00 | $18,000.00 |
| NYCX Secured Claim | $6,482,893.94 | $178,200.00 |
| Frank Keshtgar Secured Claim | $75,173.10 | $0.00 |
| Chapter 7 Administrative Claims | | |
| i) Trustee's Commissions | $8,000.00 | $0.00 |
| ii) Trustee's Legal Fees | $10,000.00 | $0.00 |
| iii) Auction, Costs, and Fees | $0.00 | $0.00 |
| Chapter 11 Administrative Claims | | |
| i) Bankruptcy Counsel | $30,000.00 | $0.00 |
| ii) Accounting Firm | $0.00 | $0.00 |
| iii) Counsel for Creditors Committee | $0.00 | $0.00 |
| iv) Post-Petition Taxes and Trade Debt | $0.00 | $0.00 |
| v) Post-Petition Wages | $0.00 | $0.00 |
| vi) Reclamation Claims | $0.00 | $0.00 |
| Priority Unsecured Claims | $21,250.57 | $0.00 |
| General Unsecured Claims | $65,819.84 | $0.00 |
| **PROCEEDS FOR GENERAL UNSECURED CREDITORS:** | | **$0.00** |

As set forth above, the estimated distribution to general unsecured creditors in the event of liquidation is 0%. In contrast, the Debtor's Plan of Reorganization proposes to pay allowed general unsecured creditors twelve (12%) percent over the plan period.

The Debtor makes no representations or warranties regarding this above liquidation analysis.

# EXHIBIT C

5:25 PM
11/23/15
Accrual Basis

# MOTOR PARK WAY ENTERPRISES
## Profit & Loss
### January through December 2014

| | | Jan - Dec 14 |
|---|---|---|
| Ordinary Income/Expense | | |
| Income | | |
| Intercompany Income | | 25.55 |
| Sales | | |
| Income - 7-Eleven | 711,480.81 | |
| STATION INCOME | 2,010,536.94 | |
| EFT | 1,618,585.54 | |
| Total Sales | | 4,340,603.29 |
| Total Income | | 4,340,628.84 |
| Cost of Goods Sold | | |
| Intercompany expense | | 457,285.79 |
| Purchases | | |
| MERCHANDISE PURCHAS... | 62,981.41 | |
| GASOLINE PURCHASES | 3,074,424.93 | |
| Total Purchases | | 3,137,406.34 |
| CLOSING INVENTORY | | -167,547.00 |
| OPENING INVENTORY | | 163,172.34 |
| Merchant Account Fees | | -177,883.46 |
| Total COGS | | 3,412,434.01 |
| Gross Profit | | 928,194.83 |
| Expense | | |
| VIOLATIONS | | 3,250.00 |
| OTHER TAXES | | 250.00 |
| Amortization | | 7,667.00 |
| SUPPLIES | | 2,913.19 |
| PEST CONTROL | | 572.36 |
| Bank Service Charges | | 2,498.99 |
| Depreciation Expense | | 13,620.00 |
| Dues and Subscriptions | | 280.00 |
| FEES | | 2.73 |
| GARBAGE REMOVAL | | 3,914.62 |
| Insurance Expense | | 22,271.03 |
| Interest Expense | | -0.63 |
| LICENSES & PERMETS | | 450.00 |
| Miscellaneous Expense | | 54,665.76 |
| PAYROLL TAX EXPENSE | | 21,025.09 |
| Professional Fees | | 2,900.00 |
| Rent Expense | | 358,572.35 |
| Repairs and Maintenance | | 7,526.65 |
| SALARIES-OTHER | | 241,155.72 |
| Travel Expense | | 4,000.00 |
| Utilities | | 90,223.78 |
| Total Expense | | 837,758.64 |
| Net Ordinary Income | | 90,436.19 |
| Other Income/Expense | | |
| Other Income | | |
| Interest Income | | 457.88 |
| MISCELLANEOUS INCOME | | 7,173.56 |
| Total Other Income | | 7,631.44 |
| Net Other Income | | 7,631.44 |
| **Net Income** | | **98,067.63** |

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re Motor Pkwy Ent INC.
Debtor

Case No. 14-75667

Reporting Period: 10/1-10/31

Federal Tax I.D. # 11-2832667

Amended

MONTHLY OPERATING REPORT

File with the Court and submit a copy to the United States Trustee within 20 days after the end of the month and submit a copy of the report to any official committee appointed in the case.

| REQUIRED DOCUMENTS | | | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CONT) | | |
| Copies of bank statements | | | |
| Cash disbursements journals | | | |
| Statement of Operations | MOR-2 | | |
| Balance Sheet | MOR-3 | | |
| Status of Post-petition Taxes | MOR-4 | | |
| Copies of IRS Form 6123 or payment receipt | | | |
| Copies of tax returns filed during reporting period | | | |
| Summary of Unpaid Post-petition Debts | MOR-4 | | |
| isting of aged Accounts Payable | | | |
| ..ccounts Receivable Reconciliation and Aging | MOR-5 | | |
| Debtor Questionnaire | MOR-5 | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents are true and correct to the best of my knowledge and belief.

Signature of Debtor — Date 11/6/2015

Signature of Joint Debtor — Date

Signature of Authorized Individual* — Date

Printed Name of Authorized Individual — Title of Authorized Individual

Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a partnership; a manager or member if debtor is a limited liability company.

FORM MOR
(10/00)

1

In re Motor Pkwy Ent Inc,
Debtor

Case No. 14-75667
Reporting Period: 10/1 - 10/31/15

# SCHEDULE OF CASH RECEIPTS AND DISBURSEMENTS

Amounts reported should be from the debtor's books and not the bank statement. The beginning cash should be the ending cash from the prior month or, if this is the first rep the amount should be the balance on the date the petition was filed. The amounts reported in the "CURRENT MONTH - ACTUAL" column must equal the sum of the four b account columns. Attach copies of the bank statements and the cash disbursements journal. The total disbursements listed in the disbursements journal must equal the total disbursements reported on this page. A bank reconciliation must be attached for each account. [See MOR-1 (CONT)]

| | BANK ACCOUNTS | | | | CURRENT MONTH | | CUMULATIVE FILING TO DATE | |
|---|---|---|---|---|---|---|---|---|
| CASH BEGINNING OF MONTH | 186503 | | | | 186503 | | 186503 | |
| RECEIPTS | | | | | | | | |
| CASH SALES | 274124 | | | | 274124 | | | |
| ACCOUNTS RECEIVABLE | | | | | | | 2890482 | |
| LOANS AND ADVANCES | | | | | | | 70650 | |
| SALE OF ASSETS | | | | | | | | |
| OTHER (ATTACH LIST) | | | | | | | | |
| TRANSFERS (FROM DIP ACCTS) | | | | | | | | |
| TOTAL RECEIPTS | 274124 | | | | 274124 | | 2961132 | |
| DISBURSEMENTS | | | | | | | | |
| NET PAYROLL | | | | | | | | |
| PAYROLL TAXES | — | | | | — | | — | |
| SALES, USE, & OTHER TAXES | 10705 | | | | — | | 100 | |
| INVENTORY PURCHASES | 201009 | | | | 10705 | | 100783 | |
| SECURED/ RENTAL/ LEASES | 29040 | | | | 201009 | | 2069347 | |
| INSURANCE | 5418 | | | | 29040 | | 296145 | |
| ADMINISTRATIVE | 18100 | | | | 5418 | | 47221 | |
| SELLING | | | | | 18100 | | 148800 | |
| OTHER (ATTACH LIST) | 3060 | | | | | | — | |
| OWNER DRAW * | — | | | | 3060 | | 58700 | |
| TRANSFERS (TO DIP ACCTS) | — | | | | — | | — | |
| PROFESSIONAL FEES | 4350 | | | | — | | 32406 | |
| U.S. TRUSTEE QUARTERLY FEES | — | | | | 4350 | | 8850 | |
| COURT COSTS | — | | | | — | | 10075 | |
| TOTAL DISBURSEMENTS | 271682 | | | | — | | — | |
| | | | | | 271682 | | 2772186 | |
| NET CASH FLOW (RECEIPTS LESS DISBURSEMENTS) | 2442 | | | | 2442 | | 188945 | |
| CASH - END OF MONTH | 188945 | | | | 188945 | | 188945 | |

* COMPENSATION TO SOLE PROPRIETORS FOR SERVICES RENDERED TO BANKRUPTCY ESTATE

## THE FOLLOWING SECTION MUST BE COMPLETED

| DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES: (FROM CURRENT MONTH ACTUAL COLUMN) | |
|---|---|
| TOTAL DISBURSEMENTS | 271682 |
| LESS: TRANSFERS TO DEBTOR IN POSSESSION ACCOUNTS | — |
| PLUS: ESTATE DISBURSEMENTS MADE BY OUTSIDE SOURCES (i.e. from escrow accounts) | |
| TOTAL DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES | 271682 |

In re Moton Play Ent Inc.
Debtor

Case No. 14-75667

Reporting Period: 10/1-10/31/15

## BANK RECONCILIATIONS

Continuation Sheet for MOR-1

A bank reconciliation must be included for each bank account. The debtor's bank reconciliation may be substituted for this page.

| | Operating # | Payroll # | Tax # | Other # |
|---|---|---|---|---|
| BALANCE PER BOOKS | 188945 | | | |
| | | | | |
| BANK BALANCE | 188945 | | | |
| (+) DEPOSITS IN TRANSIT *(ATTACH LIST)* | | | | |
| (-) OUTSTANDING CHECKS *(ATTACH LIST)*: e.g. (1,000) | | | | |
| OTHER *(ATTACH EXPLANATION)* | | | | |
| | | | | |
| ADJUSTED BANK BALANCE * | 188945 | | | |

*"Adjusted Bank Balance" must equal "Balance per Books"

| [illegible] | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| CKS OUTSTANDING | | | Ck. # | Amount |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

THER

In re Motor Plug Ent Inc,
Debtor

Case No. 14-75667
Reporting Period: 10/1-10/31/15

## STATEMENT OF OPERATIONS
(Income Statement)

The Statement of Operations is to be prepared on an accrual basis. The accrual basis of accounting recognizes revenue when it is realized and expenses when they are incurr regardless of when cash is actually received or paid.

| | Month | Cumulative Filing to Date |
|---|---|---|
| **REVENUES** | | |
| Gross Revenues | 274124 | 2961132 |
| Less: Returns and Allowances | | |
| Net Revenue | 274124 | 2961132 |
| **COST OF GOODS SOLD** | | |
| Beginning Inventory | — | — |
| Add: Purchases | 201009 | 2069347 |
| Add: Cost of Labor | — | |
| Add: Other Costs *(attach schedule)* | — | |
| Less: Ending Inventory | — | |
| Cost of Goods Sold | 201009 | 2069347 |
| Gross Profit | 73115 | 891785 |
| **OPERATING EXPENSES** | | |
| Advertising | | |
| Auto and Truck Expense | | |
| Bad Debts | | |
| Contributions | | |
| Employee Benefits Programs | | |
| Insider Compensation* | | |
| Insurance | 5418 | 47221 |
| Management Fees/Bonuses | | |
| Office Expense | | |
| Pension & Profit-Sharing Plans | | |
| Repairs and Maintenance | 2100 | 11662 |
| Rent and Lease Expense | 29040 | 296143 |
| Salaries/Commissions/Fees | 18100 | 148800 |
| Supplies | | |
| Taxes - Payroll | | 100 |
| Taxes - Real Estate | | |
| Taxes - Other | 10705 | 113742 |
| Travel and Entertainment | | — |
| Utilities | 960 | 46797 |
| Other *(attach schedule)* | | 21446 |
| Total Operating Expenses Before Depreciation | 66323 | 685911 |
| Depreciation/Depletion/Amortization | — | |
| Net Profit (Loss) Before Other Income & Expenses | 6792 | 207874 |
| **OTHER INCOME AND EXPENSES** | | |
| Other Income *(attach schedule)* | | |
| Interest Expense | | |
| Other Expense *(attach schedule)* | | |
| Net Profit (Loss) Before Reorganization Items | 6792 | 207874 |
| **REORGANIZATION ITEMS** | | |
| Professional Fees | 4350 | 8850 |
| U. S. Trustee Quarterly Fees | | 10075 |
| Interest Earned on Accumulated Cash from Chapter 11 *(see continuation sheet)* | | |
| Gain (Loss) from Sale of Equipment | | |
| Other Reorganization Expenses *(attach schedule)* | | |
| Total Reorganization Expenses | | |
| Income Taxes | | |
| Net Profit (Loss) | 2442 | 188949 |

*Insider is as defined in 11 U.S.C. Section 101(31).

FORM MOR-2
(10/00)

In re Motor Plug Ent Inc,
Debtor

Case No. 14-75667

Reporting Period: 10/1 - 10/31/15

**STATEMENT OF OPERATIONS - continuation sheet**

| BREAKDOWN OF "OTHER" CATEGORY | | Month | Cumulative Filing to Date |
|---|---|---|---|
| **Other Costs** | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Other Operational Expenses** | | | |
| Check Order | | | 26 |
| Set | | | 326 |
| Transf to DIP | | | 18414 |
| Trans Dip error | | | 1032 |
| Reversed | | | |
| **Other Income** | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Other Expenses** | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Other Reorganization Expenses** | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Reorganization Items - Interest Earned on Accumulated Cash from Chapter 11:**
Interest earned on cash accumulated during the chapter 11 case, which would not have been earned but for the bankruptcy proceeding, should be reported as a reorganization item.

In re: Maton Pkwy Ent, Inc.
Debtor

Case No. 14-75667
Reporting Period: 10/1-10/31/15

## BALANCE SHEET

The Balance Sheet is to be completed on an accrual basis only. Pre-petition liabilities must be classified separately from post-petition obligations.

| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| CURRENT ASSETS | | |
| Unrestricted Cash and Equivalents | 188945 | |
| Restricted Cash and Cash Equivalents (see continuation sheet) | | |
| Accounts Receivable (Net) | | |
| Notes Receivable | | |
| Inventories | | |
| Prepaid Expenses | | |
| Professional Retainers | | |
| Other Current Assets (attach schedule) | | |
| TOTAL CURRENT ASSETS | 188945 | |
| PROPERTY AND EQUIPMENT | | |
| Real Property and Improvements | | |
| Machinery and Equipment | | |
| Furniture, Fixtures and Office Equipment | | |
| Leasehold Improvements | | |
| Vehicles | | |
| Less: Accumulated Depreciation | | |
| TOTAL PROPERTY & EQUIPMENT | | |
| OTHER ASSETS | | |
| Loans to Insiders* | | |
| Other Assets (attach schedule) | | |
| TOTAL OTHER ASSETS | | |
| TOTAL ASSETS | 188945 | |

| LIABILITIES AND OWNER EQUITY | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| LIABILITIES NOT SUBJECT TO COMPROMISE (Postpetition) | | |
| Accounts Payable | | |
| Taxes Payable (refer to FORM MOR-4) | 10705 | |
| Wages Payable | | |
| Notes Payable | | |
| Rent / Leases - Building/Equipment | | |
| Secured Debt / Adequate Protection Payments | | |
| Professional Fees | | |
| Amounts Due to Insiders* | | |
| Other Post-petition Liabilities (attach schedule) | | |
| TOTAL POST-PETITION LIABILITIES | 10705 | |
| LIABILITIES SUBJECT TO COMPROMISE (Pre-Petition) | | |
| Secured Debt | | |
| Priority Debt | 98301 | 98301 |
| Unsecured Debt | 91697 | 91697 |
| TOTAL PRE-PETITION LIABILITIES | | |
| TOTAL LIABILITIES | 200703 | 189998 |
| OWNER EQUITY | | |
| Capital Stock | | |
| Additional Paid-In Capital | | |
| Partners' Capital Account | | |
| Owner's Equity Account | | |
| Retained Earnings - Pre-Petition | | |
| Retained Earnings - Postpetition | | |
| Adjustments to Owner Equity (attach schedule) | | |
| Postpetition Contributions (attach schedule) | | |
| NET OWNER EQUITY | | |
| TOTAL LIABILITIES AND OWNERS' EQUITY | 200703 | 189998 |

*"Insider" is defined in 11 U.S.C. Section 101(31).

In re: Motor Play Rent, Inc,
Debtor

Case No. 14-75667

Reporting Period: 10/1-10/31/15

## BALANCE SHEET - continuation sheet

| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| Other Current Assets | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | 0 | 0 |
| [illegible] | | |
| | | |
| | | |
| | | |
| | | |
| | 0 | 0 |
| [illegible] | | |
| | | |
| | | |
| | | |
| | | |
| | 0 | 0 |
| Adjustments to Owners' Equity | | |
| | | |
| | | |
| | | |
| | | |
| | 0 | 0 |
| Post-petition Contributions | | |
| | | |
| | | |
| | | |
| | | |
| | 0 | 0 |

estricted Cash: Cash that is restricted for a specific use and not available to fund operations. Typically, restricted cash is segregated into a separate account, such as an escrow account.

In re MOTOR Pkwy Rnt Inc,
Debtor

Case No. 14-75667
Reporting Period: 10/1-10/31/15

## STATUS OF POST-PETITION TAXES

The beginning tax liability should be the ending liability from the prior month or, if this is the first report, the amount should be zero.
Attach photocopies of IRS Form 6123 or payment receipt to verify payment or deposit of federal payroll taxes.
Attach photocopies of any tax returns filed during the reporting period.

| | Beginning Tax | Amount Withheld or | Amount Paid | Date Paid | Check No. or EFT | Ending Tax |
|---|---|---|---|---|---|---|
| **Federal** | | | | | | |
| Withholding | | | | | | |
| FICA-Employee | | | | | | |
| FICA-Employer | | | | | | |
| Unemployment | | | | | | |
| Income | | | | | | |
| Other: | | | | | | |
| Total Federal Taxes | | | | | | |
| **State and Local** | | | | | | |
| Withholding | | | | | | |
| Sales | 10702 | | 10702 | 10/21 | EFT | |
| Excise | | | | | | |
| Unemployment | | | | | | |
| Real Property | | | | | | |
| Personal Property | | | | | | |
| Other: | | | | | | |
| Total State and Local | | | | | | |
| Total Taxes | 10702 | | 10702 | 10/21 | EFT | |

## SUMMARY OF UNPAID POST-PETITION DEBTS

Attach aged listing of accounts payable.

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|
| Accounts Payable | | | | | | |
| Wages Payable | | | | | | |
| Taxes Payable | | | | | | |
| Rent/Leases-Building | | | | | | |
| Rent/Leases-Equipment | | | | | | |
| Secured Debt/Adequate Protection Payments | | | | | | |
| Professional Fees | | | | | | |
| Amounts Due to Insiders | | | | | | |
| Other: | | | | | | |
| Other: | | | | | | |
| Total Post-petition Debts | | | | | | |

Explain how and when the Debtor intends to pay any past due post-petition debts.

In re Moton Pkwy Ent INC,
Debtor

Case No. 14-75667
Reporting Period: 10/1-10/31/15

## ACCOUNTS RECEIVABLE RECONCILIATION AND AGING

| Accounts Receivable Reconciliation | Amount |
|---|---|
| Total Accounts Receivable at the beginning of the reporting period | — |
| Plus: Amounts billed during the period | — |
| Less: Amounts collected during the period | — |
| Total Accounts Receivable at the end of the reporting period | — |

| Accounts Receivable Aging | Amount |
|---|---|
| 0 - 30 days old | — |
| 31 - 60 days old | — |
| 61 - 90 days old | — |
| 91+ days old | — |
| Total Accounts Receivable | — |
| | — |
| Less: Bad Debts (Amount considered uncollectible) | — |
| | — |
| Net Accounts Receivable | |

## DEBTOR QUESTIONNAIRE

| Must be completed each month | Yes | No |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period? If yes, provide an explanation below. | | ✓ |
| 2. Have any funds been disbursed from any account other than a debtor in possession account this reporting period? If yes, provide an explanation below. | | ✓ |
| 3. Have all post-petition tax returns been timely filed? If no, provide an explanation below. | ✓ | |
| 4. Are workers compensation, general liability and other necessary insurance coverages in effect? If no, provide an explanation below. | ✓ | |



America's Most Convenient Bank®

STATEMENT OF ACCOUNT

MOTOR PARKWAY ENTERPRISES INC
DIP CASE 14-75667 EDNY
701 W MONTAUK HWY
BAY SHORE NY 11706

Page: 1 of 6
Statement Period: Oct 01 2015-Oct 31 2015
Cust Ref #: 4311234449-039-T-###
Primary Account #:

## Chapter 11 Checking

MOTOR PARKWAY ENTERPRISES INC
DIP CASE 14-75667 EDNY

ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 186,502.87 | Average Collected Balance | 126,842.81 |
| Deposits | 118,102.00 | Annual Percentage Yield Earned | 0.00% |
| Electronic Deposits | 156,021.50 | Days In Period | 31 |
| Checks Paid | 58,637.36 | | |
| Electronic Payments | 12,420.41 | | |
| Other Withdrawals | 200,625.00 | | |
| Ending Balance | 188,943.60 | | |

DAILY ACCOUNT ACTIVITY

**Deposits**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/13 | DEPOSIT | 5,147.00 |
| 10/13 | DEPOSIT | 4,759.00 |
| 10/13 | DEPOSIT | 3,541.00 |
| 10/13 | DEPOSIT | 3,301.00 |
| 10/15 | DEPOSIT | 4,701.00 |
| 10/15 | DEPOSIT | 4,166.00 |
| 10/16 | DEPOSIT | 5,323.00 |
| 10/19 | DEPOSIT | 100.00 |
| 10/23 | DEPOSIT | 5,730.00 |
| 10/23 | DEPOSIT | 4,394.00 |
| 10/23 | DEPOSIT | 2,804.00 |
| 10/26 | DEPOSIT | 4,307.00 |
| 10/26 | DEPOSIT | 4,188.00 |
| 10/26 | DEPOSIT | 4,022.00 |
| 10/29 | DEPOSIT | 5,257.00 |
| 10/29 | DEPOSIT | 4,974.00 |
| 10/29 | DEPOSIT | 4,404.00 |
| 10/29 | DEPOSIT | 4,392.00 |
| 10/29 | DEPOSIT | 4,161.00 |
| 10/29 | DEPOSIT | 4,077.00 |
| 10/29 | DEPOSIT | 3,925.00 |
| 10/29 | DEPOSIT | 3,907.00 |
| 10/29 | DEPOSIT | 3,547.00 |
| 10/29 | DEPOSIT | 2,471.00 |
| 10/30 | DEPOSIT | 5,110.00 |
| 10/30 | DEPOSIT | 4,274.00 |
| 10/30 | DEPOSIT | 4,103.00 |



Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender



America's Most Convenient Bank®

STATEMENT OF ACCOUNT

MOTOR PARKWAY ENTERPRISES INC
DIP CASE 14-75667 EDNY


Statement Period: Oct 01 2015-Oct 31 2015
Cust Ref #: 4311234449-039-T-###
Primary Account #:

DAILY ACCOUNT ACTIVITY

**Deposits (continued)**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/30 | DEPOSIT | 4,081.00 |
| 10/30 | DEPOSIT | 2,936.00 |
| | Subtotal: | 118,102.00 |

**Electronic Deposits**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/1 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200378789 | 4,023.62 |
| 10/2 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200369783 | 4,317.07 |
| 10/5 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200380628 | 3,529.14 |
| 10/5 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200380630 | 350.00 |
| 10/5 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200380627 | 16.08 |
| 10/6 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200386152 | 7,097.46 |
| 10/6 | CCD DEPOSIT, 7-ELEVEN INC. PAYMENT 0000900719305 | 7,000.00 |
| 10/6 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200386151 | 22.74 |
| 10/7 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200384735 | 4,292.05 |
| 10/7 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200384734 | 34.49 |
| 10/8 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200370810 | 4,342.21 |
| 10/9 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200370852 | 5,268.77 |
| 10/9 | CCD DEPOSIT, SOUTHLAND CORP TRANSFER 4311234449 | 4,937.04 |
| 10/9 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200370851 | 5.67 |
| 10/13 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200396744 | 9,644.45 |
| 10/13 | CCD DEPOSIT, 7-ELEVEN INC. PAYMENT 0000900722257 | 7,000.00 |
| 10/13 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200394191 | 4,344.77 |
| 10/13 | CCD DEPOSIT, SOUTHLAND CORP TRANSFER 4311234449 | 1,802.38 |
| 10/13 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200396743 | 12.61 |
| 10/14 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200396788 | 3,482.28 |
| 10/15 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200396835 | 3,984.12 |
| 10/15 | CCD DEPOSIT, SOUTHLAND CORP TRANSFER 4311234449 | 2,254.67 |
| 10/15 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200396834 | 1.10 |
| 10/16 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200399426 | 4,057.86 |
| 10/16 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200399425 | 2.23 |
| 10/19 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200398369 | 4,854.23 |
| 10/19 | CCD DEPOSIT, SOUTHLAND CORP TRANSFER 4311234449 | 1,776.85 |
| 10/19 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200398368 | 1.93 |
| 10/20 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200400541 | 9,398.36 |
| 10/20 | CCD DEPOSIT, 7-ELEVEN INC. PAYMENT 0000900726764 | 7,000.00 |
| 10/20 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200400540 | 22.81 |
| 10/21 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200391919 | 4,411.98 |
| 10/21 | CCD DEPOSIT, SOUTHLAND CORP TRANSFER 4311234449 | 2,162.18 |
| 10/21 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200391918 | 3.32 |
| 10/22 | CCD DEPOSIT, AMOCO DLR/JBR EDI PAYMNT 5200400597 | 4,343.32 |



Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender